IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ISAIAH LYNDELL CAPITOL,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 09-16 Erie** |
| | ) | |
| **v.** | ) | **District Judge Sean J. McLaughlin** |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **JOSEPH P. NISH, et al.,** | ) | |
| **Respondents.** | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

## II. REPORT[1]

Before the Court is a petition under 28 U.S.C. § 2254 for a writ of habeas corpus filed by the Petitioner, Isaiah L. Capitol, who is a state prisoner. He claims that: (1) his trial counsel, Andrew H. Weinraub, Esq., was ineffective; (2) the prosecutor committed misconduct at his trial; and, (3) his sentence is illegal. [ECF No. 4 at 5-9.]

### A. Relevant Background

The Superior Court of Pennsylvania summarized the relevant facts of this case as follows:

---

[1] Respondents have submitted all relevant transcripts and the Common Pleas Court's file, which contains documents numbered 1 through 77, and which will be cited to as "CP Dkt. No. __."

> On June 11, 2003 at approximately 2:15 AM, Paul Payne and Alexander Semenyakov were robbed of various items (clothes, jewelry, cell phones, pager, and cash) and assaulted by a black male in a white Lincoln Towncar in the 1200 block of East 28th Street in Erie, Pennsylvania. The victims immediately called the police and [Petitioner] was arrested several hours later as the perpetrator of the crimes. He matched a description of the assailant and several stolen items were found in his possession [including Mr. Payne's shirt, which Petitioner was wearing when he was arrested].
>
> Following his arrest, [Petitioner] waived his Miranda rights and gave police officers a videotaped statement. [Petitioner] gave police an alibi – an acquaintance, Walter Johnson, borrowed [Petitioner's] car, robbed the victims, returned [Petitioner's] car at roughly 4:30 a.m., abandoned the stolen items in the car, and left Pennsylvania. When the robbery occurred, [Petitioner] was at home talking on the telephone with his girlfriend.
>
> Trial commenced on November 18, 2003. The Commonwealth presented [Petitioner's] videotaped statement, in which [Petitioner] stated: (1) Mr. Johnson matched [Petitioner's] physical description; (2) Mr. Johnson visited Erie on June 11, 2003, from Cleveland, Ohio, where he was staying with his ailing, elderly aunt, Bernadeen Johnson; and (3) [Petitioner's] mother enjoyed a "close" relationship with Bernadeen Johnson (N.T. Trial 11/18/03, at 93-101). Also, when Mr. Johnson returned [Petitioner's] car at roughly 4:30 a.m., [Petitioner] was still on the telephone with his girlfriend. [Petitioner] set the receiver down but did not hang up, spoke with Mr. Johnson for a few minutes, then returned to the telephone. (Id. at 123).
>
> At trial, Messrs. Payne and Semenyakov positively identified [Petitioner] as their assailant. [Petitioner] asserted his alibi defense. [Petitioner's] mother testified that she did not know someone named Bernadeen Johnson from Cleveland, Ohio. (Id. at 148). [Petitioner's] girlfriend testified that [Petitioner] made no reference to Mr. Johnson's use of [Petitioner's] car and did not interrupt their phone conversation at roughly 4:30 a.m. to speak with anyone.

(CP Dkt. No. 68, Commonwealth v. Capitol, No. 19 WDA 2007, slip op. at 1-3 (Pa.Super. Oct. 4, 2007)).

On November 18, 2003, the jury found Petitioner guilty of Robbery (Counts 1 and 2), Theft by Unlawful Taking (Counts 3 and 4), Receiving Stolen Property (Count 5 and 6), Simple Assault (Count 7), and Terroristic Threats (Counts 8 and 9). On July 15, 2005, following an appeal that is not relevant

to this proceeding,[2] the Court of Common Pleas sentenced Petitioner to an aggregate term of 11-22 years' imprisonment, to be served consecutive to a separate parole revocation sentence that he was serving.

In his direct appeal to the Superior Court, Petitioner, who was represented by attorney Vincent Nudi, Esq., claimed that the jury's verdict was against the weight of the evidence. He also claimed that his trial counsel, Attorney Weinraub, was ineffective. On July 10, 2006, the Superior Court issued a Memorandum in which it denied the weight of the evidence claim as being without merit. It dismissed the ineffective assistance claims without prejudice and instructed Petitioner that such claims must be raised in a timely post-conviction proceeding, not on direct appeal. (CP Dkt. No. 56, Commonwealth v. Capitol, No. 1642 WDA 2005, slip op. (Pa.Super. July 10, 2006)).

On or around September 18, 2006, Petitioner filed a *pro se* motion under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, in which he raised these claims:

(1) Trial counsel was ineffective for failing to object to the following instances of misconduct on the part of the prosecutor during trial:

- (a) the prosecutor made inflammatory remarks in his opening statements about physically removing clothes from the victims' bodies, which were not substantiated by the evidentiary record;
- (b) the prosecutor introduced the perjured testimony of victim Paul Payne;
- (c) the prosecutor introduced the perjured testimony of victim Alex Semenyakov;
- (d) the prosecutor made inflammatory statements about "Walker Johnson" being Petitioner's "twin," which were not substantiated by the evidentiary record;

---

[2] In that appeal, in which Petitioner was proceeding *pro se*, the Superior Court determined that "because of procedural errors, we are not able to conduct a meaningful review of the issues on appeal. The key problem was the trial court's consideration of a prematurely filed 'post-sentence' motion in the jury trial case, which was filed *pro se* while [Petitioner] had counsel. The remaining difficulties flowed from that initial mistake…. For these reasons, we are compelled to vacate the judgments of sentence and remand for resentencing[.]" (CP Dkt. No. 38, Capitol v. Commonwealth, No. 97 WDA 2004, slip op. at 1-2 (Pa.Super. May 23, 2005)).

(e) the prosecutor improperly attacked the credibility of defense witness Kassandra Henry and Petitioner;

(f) the manner in which the prosecutor solicited in-court identifications of Petitioner was improper;

2. trial counsel was ineffective because in his closing argument he discredited Petitioner's defense that Walter Johnson had committed the crimes; and,

3. trial counsel was ineffective for failing to challenge the search warrant.

(CP Dkt. No. 63, Commonwealth v. Capitol, No. 2196 of 2003, slip op. at 4 (CP Erie, Nov. 8, 2006) (setting forth Petitioner's PCRA claims)). Petitioner waived his state statutory right to PCRA counsel because he wanted to represent himself. (CP Dkt. No. 61).

On November 8, 2006, the PCRA Court issued a notice of intent to dismiss the petition without an evidentiary hearing, pursuant to Pennsylvania Rule of Criminal Procedure 907, and an accompanying 16-page Opinion in which it explained why Petitioner's claims had no merit. (See CP Dkt. No. 63, Capitol, No. 2196 of 2003, slip op. 1-16). On November 29, 2006, the court officially denied the PCRA petition. Petitioner filed an appeal with the Superior Court. It appears that he raised all of the claims he had raised before the PCRA Court.[3] (See CP Dkt. No. 68, Capitol, No. 19 WDA 2007, slip op. at 5). On October 4, 2007, the Superior Court affirmed the PCRA Court's decision. (Id. at 1-10). It denied each of Petitioner's claims on the merits. The Pennsylvania Supreme Court denied a petition for allowance of appeal on May 7, 2008.

A week later, on May 14, 2008, Petitioner filed a second PCRA petition in which he claimed that his sentence was illegal. (CP Dkt. No. 70). The PCRA Court dismissed it, and Petitioner appealed. On December 30, 2008, the Superior Court issued a Memorandum in which it held that the second petition

[3] Respondents have not submitted the appellate brief that Petitioner filed in this appeal, and the Superior Court's subsequent written decision does not indicate the specific grounds of some of his claims. The Court shall give Petitioner the benefit of the doubt and assume that in his appeal he raised the same grounds for relief that he raised before the PCRA Court.

was untimely under the PCRA's statute of limitations. (CP Dkt. No. 76, Commonwealth v. Capitol, No. 965 WDA 2008, slip op. (Pa.Super. Dec. 30, 2008)).

Petitioner next filed the instant petition for writ of habeas corpus with this Court. [ECF No. 4]. Respondents have filed their Answer [ECF No. 18] and the Common Pleas Court's file.

## B. Discussion

### (1) Petitioner's Claims Have No Merit

In his petition for writ of habeas corpus, Petitioner raises numerous claims that Attorney Weinraub was ineffective and that the prosecutor committed misconduct at trial. Some of these claims are difficult to discern. In his Memorandum of Law [ECF No. 17], Petitioner focuses on his claim that Weinraub was ineffective for sabotaging his defense that Walter Johnson had committed the crimes. The Court shall give Petitioner the benefit of the doubt and assume that it is his intent to raise the ineffective assistance of counsel claims that he raised in his first PCRA petition, which contained several underlying claims of prosecutorial misconduct. As explained below in section B.2 and 3, those are the only claims that this Court may consider on the merits.[4]

Since the state court denied all of the claims Petitioner raised in his first PCRA proceeding on the merits, this Court's analysis of them is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which is codified at 28 U.S.C. § 2254(d) and which modified "a federal habeas court's role in reviewing state prisoner applications in

[4] The claim that Petitioner raised on direct review – that the verdicts were against the weight of the evidence – is not cognizable in federal habeas because it raises solely an issue of state law. Tibbs v. Florida, 457 U.S. 31, 37-45 (1982) (weight of evidence claims raise questions of credibility; it is different from a claim that the evidence was insufficient to support the conviction); see also Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence[.]"). In conducting habeas review for a state prisoner such as Petitioner, this Court is limited to deciding whether his state conviction violated the Constitution of the United States, 28 U.S.C. § 2254(a), and may not rule on issues of purely state-law error. See, e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

In relevant part, AEDPA restricts a federal court's authority to grant relief when, as is the case here, the state court has "adjudicated on the merits" the petitioner's federal constitutional claims. In such cases, federal habeas relief may only be granted when the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" See also Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004).[5]

As the Supreme Court recently observed:

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. Felker v. Turpin, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, — U.S. —, 131 S.Ct. 770, 786-87 (2011). See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state

[5] "A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular…case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Lambert , 387 F.3d at 234, quoting Williams, 529 U.S. at 405-07.

court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold").

The "clearly established Federal law" for AEDPA purposes in which to analyze Petitioner's claims of ineffective assistance is set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, Petitioner first must show that his trial counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688; see also Williams, 529 U.S. at 390-91. The law presumes that his counsel was effective:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel's was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Id. at 689 (internal citations and quotations omitted). The Third Circuit Court has explained that it is "only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997), quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

Strickland also requires Petitioner to demonstrate that he was prejudiced by counsel's deficient performance. "This requires showing that counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. In other words, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The state court applied the correct legal standard when it evaluated Petitioner's claims. (CP Dkt. No. 68, Capitol, No. 19 WDA 2007, slip op at 6; CP Dkt. No. 63, Capitol, No. 2196 of 2003, slip op at 6). See also Commonwealth v. Kimball, 724 A.2d 326 (Pa. 1999) (legal standard for evaluating ineffective assistance claims in a PCRA proceeding is the same as the federal Strickland standard). Therefore, its adjudication of his claims satisfies review under the "contrary to" clause of § 2254(d)(1). See Williams, 529 U.S. at 406.

The question for this Court, then, is to decide whether the state court's adjudication of Petitioner's claims was an "unreasonable application of" Strickland. 28 U.S.C. § 2254(d)(1). In conducting this analysis the Court is cognizant that:

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," [Strickland, 466 U.S.] at 689, 104 S.Ct. 2052; Lindh v. Murphy, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, [Knowles v. Mirzayance, 556 U.S. at —, 129 S.Ct. 1411, 1420 (2009)]. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at —, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S.Ct. at 788.

**(a) Was trial counsel ineffective for failing to object to misconduct on the part of the prosecutor during trial?**

**1. Failing to object to alleged perjured testimony**

Petitioner claims that Attorney Weinraub was ineffective for not objecting, requesting a mistrial, and/or moving to strike the testimony of the victims. He claims that they perjured themselves. In support of this contention, he points out that the victims told police that the incident happened at 2:30

a.m., but testified at trial that it occurred at 2:00 a.m. Second, Petitioner notes that one victim told the police that the perpetrator had a fade haircut, but admitted at trial that Petitioner did not have such a haircut in his booking photo. Third, there was a discrepancy between one victim's testimony about the stolen jeans and the jeans seized from Petitioner that were offered into evidence. Finally, one victim's estimate of the perpetrator's weight was inconsistent with Petitioner weight at the time of the crime.

The state court determined that there is no evidence that the victims perjured themselves. (See CP Dkt. No. 68, Capitol, No. 19 WDA 2007, slip op at 8; CP Dkt. No. 63, Capitol, No. 2196 of 2003, slip op at 9-10). This Court agrees. In actuality, this claim is simply a repackaging of Petitioner's direct appeal challenge to the weight of the evidence. In disposing of that claim, the state court held:

> [E]ach of the discrepancies set forth above was explored at trial…. Although there were differences between the incident times reported and testified to by the victims, the Commonwealth offered other evidence refuting [Petitioner's] alibi defense, as well as testimony from one of the victims that indicated he had been imprecise in giving the time of the incident to police. Regarding the second inconsistency, one victim admitted at trial that the haircut in [Petitioner's] photo could not be considered a fade haircut, as he had told police. However, both victims positively identified [Petitioner] during the trial as the man who robbed them. The jeans stolen were described by the victim as being a size thirty-eight, with brown stitching and no holes. The jeans that were seized from [Petitioner] and introduced into evidence were a size thirty-size, with white stitching and a hole. However, the victim testified that there was no doubt in his mind that these were his pants; he further testified that he was between jean sizes and he didn't remember which size he bought, and that the hole was not in them at the time of the robbery. Finally, one victim told police that the perpetrator weighed approximately one-hundred sixty-five pounds, but [Petitioner] weight approximately thirty pounds more than that. However, that same victim again positively and unequivocally identified [Petitioner] as the robber.
>
> Each of the inconsistencies that [Petitioner] points out was explored at trial. In each instance, the Commonwealth presented evidence that at least partially explained the inconsistencies. All of the inconsistencies challenge the identification of the robber, but the identification testimony given by both victims and the neighbor/eyewitness identifying [Petitioner] was unequivocal.

(CP Dkt. No. 56, Capitol, No. 1642 WDA 2005, slip op. at 3-4).

Having had no success on direct review with his weight-of-the-evidence claim, Petitioner now raises the same arguments under the guise of a claim that Weinraub was ineffective for failing to object to the victims' purported "perjured" testimony. However, as the state court concluded, Petitioner fails to meet any of the elements of an ineffective assistance claim. (CP Dkt. No. 68, Capitol, No. 19 WDA 2007, slip op. at 8). There is no basis for this Court to disturb the state court's decision under AEDPA's standard of review.

### 2. The prosecutor's opening statement

Petitioner claims that his counsel was ineffective for failing to object to the prosecutor's "lies" in his opening statement. The prosecutor said: "you're also going to hear that at some point the actual shirt off Paul Payne and the pants off of Paul Payne are taken by the [Petitioner]." (11/18/03 Trial Tr. at 10). Petitioner asserts that the "prosecutor's lie" conflicts with the following testimony:

District Attorney: …And what did you hand over next, or what did you do next?

Paul Payne: Well, I gave him a cellphone and he wanted my chain, so I gave that to him and then he took my shirt.

District Attorney: Were you carrying your shirt?

Paul Payne: Yeah, I was carrying it.

District Attorney: You were carrying your shirt, okay, what else?

Paul Payne: My keys out of my pocket, cigarettes, my lighter, and then he took the pager, the chain, and the charm from Alex [the other victim].

District Attorney: What about pants, were anybody's pants taken?

Paul Payne: Me.

District Attorney: So you were actually wearing pants?

Paul Payne: Yes.

(11/18/03 Trial Tr. at 20).

It is true that Paul Payne testified that he was "carrying" his shirt and therefore Petitioner did not, as the prosecutor had stated in his opening remarks, literally "take the shirt off of his back." However, the prosecutor's remark was no so serious as to warrant an objection by Weinraub. Petitioner has not shown that he was ineffective for failing to raise an objection, let alone show that the state court's rejection of this claim was an objectively unreasonable application of Strickland, as required under AEDPA's standard of review. Thus, this claim must be denied.

### 3. Statements about Walter Johnson

Petitioner argues that Weinraub was ineffective for failing to object to the prosecutor's comments about "Walter Johnson and his twin." In his opening statement, the prosecutor told the jury:

> And you're going to hear what [Petitioner] indicates, what story he gives to Detective Barry Snyder as to how it wasn't him but it was someone who was basically like his twin, or looked a lot like him; it was someone else who used his car, looked almost exactly like him, but wasn't him. And you'll hear him explain why he happened to have all of those or some of those items that were taken, why he's actually wearing them and has those on his person.

(11/18/03 Trial Tr. at 12). In the prosecutor's closing statement, he said:

> Gee, Walter Johnson, I wonder if there's any Walter Johnsons? That's like saying are there any Bob Smiths in Texas…. Nothing in [Petitioner's alibi testimony] really made a heck of a lot of sense. Why? Because it didn't happen that way…. Some twin or – I don't want to use the word twin, but someone who looked amazingly similar to him doesn't just blow into town, … [Petitioner] wants you to believe that this individual comes into town, robs people of their things, and then doesn't even take them.

(Id. at 186-87).

There was nothing improper in the prosecutor's comments, which addressed Petitioner's defense that someone who resembled him by the name of Walter Johnson had committed the crimes for which

he was being tried. Accordingly, Weinraub was not ineffective for failing to object, and Petitioner is not entitled to relief under AEDPA.

#### 4. Remarks attacking the credibility of Kassandra Henry and Petitioner

Petitioner claims that his trial counsel should have objected during the prosecutor's closing argument when he attacked the credibility of defense witness Kassandra Henry and of Petitioner. The prosecutor stated:

> And I would submit to you while the first witness was believable, the second [Kassandra Henry] was not. She was trying to help out [Petitioner] as best she could. I just happened to catch her in a small, little detail. The devil is always in the details, ladies and gentlemen. Interesting that she goes from knowing the car is definitely there to then suddenly, no, no, wait, no, no, I don't know, it's not there.
>
> - - -
>
> [Petitioner] thought he'd come in and give a video statement and he thought he'd be real slick and talk his way out of it. Well, ladies and gentlemen, it's time that you tell him you're not falling for that game. You've seen the evidence, you've heard the witnesses, and you've listened to everything he said on there and it doesn't match up. Why? Because he's guilty of the charges. He's the one who went there, he is the one who hit Paul. He is the one who robbed Paul and Alex, and he is the one who's caught with all of their things.
>
> So what I'm going to ask you to do now is deliver justice for these victims and find the defendant guilty of the charges, because that's exactly what he is. There is no twin from Texas who just happened to come in and this is the most unlucky person in the world. He's the one who did it and no one else.

(11/18/03 Trial Tr. at 191).

As the state court concluded, the prosecutor's statements were fair comments based upon Petitioner's defense. His remarks were not improper and Weinraub was not ineffective for failing to object. Petitioner is entitled to no relief under AEDPA.

### 5. In-court identifications

Petitioner claims that his counsel was ineffective for not objecting to the prosecution witnesses' in-court identifications, which are set forth below and which he claims were "highly suggestive."

- The identification by victim Paul Payne:

District Attorney: Let me ask you this now, the person who did those things to you on June 11th of 2003, do you see him in the courtroom today?

Paul Payne: Yes.

District Attorney: Could you point him out for the jury, describe an article of clothing he's wearing?

Paul Payne: Black shirt.

District Attorney: Your Honor, let the record reflect he's identified the defendant.

The Court: Any objections?

Weinraub: None, Your Honor.

(11/18/03 Trial Tr. at 24).

- The identification by victim Alex Semenyakov:

District Attorney: Let me kind of stop you a little bit. You said "he." Was it just one person?

Alex Semenyakov: Yes.

District Attorney: Black or White?

Alex Semenyakov: Black.

District Attorney: Okay, do you see anyone in the courtroom today that resembles that person you saw?

Alex Semenyakov: Yes, I do.

District Attorney: Could you point him out and describe an article of clothing he's wearing?

| | |
|---|---|
| Alex Semenyakov: | Right there.  Black shirt and khaki pants. |
| District Attorney: | Your Honor, let the record reflect he's identified the defendant. |
| The Court: | Any objections? |
| Weinraub: | None, Your Honor. |

(11/18/03 Trial Tr. at 47).

- The identification by William Gonzalez, who observed Petitioner committing the crimes from his living room window:

| | |
|---|---|
| District Attorney: | I'll show you now what's been premarked as Defendant's Exhibit B [a photograph of Petitioner].  Do you recognize that? |
| - - - | |
| Wm. Gonzalez: | Same shape I see through my window. |
| District Attorney: | That looks similar to the person you saw in the window? |
| Wm. Gonzalez: | Yes. |
| District Attorney: | You can't say 100 percent that's him, though? |
| Wm. Gonzalez: | No. |
| District Attorney: | Let me ask you this, do you see anyone else in the courtroom who looks similar to what you saw that night? |
| Wm. Gonzalez: | Yes, sir. |
| District Attorney: | And why don't you point him out and describe an article of clothing he's wearing?  Point to him and just describe something he's wearing. |
| Wm. Gonzalez: | It's that gentleman right there with the black T-shirt. |
| District Attorney: | Your Honor, let the record reflect he's identified the defendant. |
| The Court: | Any objections? |

Weinraub: None, Your Honor.

(11/18/03 Trial Tr. at 62-63). On cross examination, Attorney Weinraub probed into just how long Gonzalez had observed Petitioner's face. Gonzalez stated that he had a good look at Petitioner's face for about three to four seconds. (Id. at 64-65). He then questioned Gonzalez about whether the police had asked him to look at a line-up of individuals. Gonzalez explained that he told the police that he would review a line-up "anytime," but that the police never followed up with him about it. (Id. at 66).

The state court concluded that the in-court identifications were not suggestive because the prosecutor asked the witnesses proper non-leading questions. It therefore concluded that Weinraub was not ineffective for failing to object. Even if Weinraub had objected to the methodology the prosecutor used to have Gonzalez identify Petitioner at trial, and even if the trial court had sustained counsel's objection, the prosecution still had the in-court identifications of the two victims. Moreover, this Court notes that Weinraub did probe weaknesses in Gonzalez's in-court identification and attempted to show that he did not observe the perpetrator's face for a sufficient amount of time necessary to make a reliable identification. He also elicited helpful testimony from Gonzalez that the police failed to have him identify Petitioner through a line-up, even though he had offered to do so.

In sum, Weinraub handled the matter in an effective manner and there is no basis for relief. Petitioner simply has not shown that the state court's adjudication of this claim was an objectively unreasonable application of Strickland, and therefore it must be denied under AEDPA.

**(b) Was trial counsel ineffective for discrediting Petitioner's defense that Walter Johnson had committed the crimes?**

Next, Petitioner contends that Weinraub was ineffective for attacking in his closing argument Petitioner's defense that Walter Johnson had committed the crimes when he stated:

> You heard [Petitioner] give you his version of what happened. And, my, isn't he a fancy story teller? He's the next Stephen King. Or, he's telling you the truth. Can we get Walter Johnson here? Well, Walter Johnson ain't going to come in and say "I did it." I don't think that even happens on TV. But when my client tells Detective Snyder that he meets – while in the service he meets Walter Johnson and he asked Walter Johnson if – before he loans Walter Johnson his car, "Walter, do you have a driver's license?"
>
> "Yes."
>
> **How difficult is it for a police officer to check if [Walter Johnson] has a driver's license? I don't know. It doesn't matter what I know or don't know. It wasn't done. I'm saying to you it's probably a terrifically easy thing to do. And wouldn't that have been some information you might like to hear if this fellow Walter Johnson actually exists? Well, I checked the records, I called Texas, the DMV or Texas DOT or whatever it's called in Texas, and ain't no Walter Johnson that had a driver's license there, or Pennsylvania for that matter.**
>
> Now, the interview that [Petitioner] gave occurred at – it was later that day and it was at approximately 7:11 at night. So I suggest one or two possibilities are extremely likely, either [Petitioner] is a fantastic fabricator and a liar and a story teller and a weaver of intricate tales, or he's telling you the truth, and he told Detective Snyder the truth.

(11/18/03 Trial Tr. at 177-78 (emphasis added)).

Petitioner misinterprets Weinraub's closing argument. He was not asserting that he had confirmed that Walter Johnson did not exist or that Petitioner's defense was without support. Rather, as the state court concluded:

> Counsel was speaking as he thought the Commonwealth should have spoken, based upon a proper investigation that the Commonwealth should have but did not do. Counsel emphasized that the Commonwealth had made no attempt to disprove the existence of Walter Johnson. If the Commonwealth had looked for Walter Johnson and found no one in the system, the Commonwealth could refute [Petitioner's] alibi. Read in context, counsel was suggesting that the jury should accept the alibi, because the Commonwealth had failed to disprove it.

(CP Dkt. No. 68, Capitol, No. 19 WDA 2007, slip op. at 8). The court's adjudication of this claim withstands review under AEDPA. The Court agrees that, when Weinraub's comments are analyzed in context, he was not discrediting Petitioner's defense, but rather was being critical of the police investigation and the Commonwealth's case. He was arguing that, if there was no Walter Johnson, then

the Commonwealth would have presented testimony confirming that fact. Weinraub's argument was that, based on a lack of such evidence, the Commonwealth could not refute Petitioner's alibi and so the jury should believe his testimony that he had loaned his vehicle to Johnson and that it was Johnson or another person who had committed the crimes.

**(c) Was trial counsel ineffective for failing to challenge the search warrant?**

Petitioner claims that Weinraub was ineffective for failing to challenge the search warrant. He asserts that the police conducted an illegal search of his car pursuant to an unsigned warrant. The state court rejected this claim because Petitioner failed to offer any support for it. (See CP Dkt. No. 68, Capitol, No. 19 WDA 2007, slip op. at 9; CP Dkt. No. 63, Capitol, No. 2196 of 2003, slip op. at 15). In fact, the PCRA court noted that it reviewed the original search warrant, which it attached as Exhibit 1 to its November 8, 2006, Opinion, and it showed that the issuing authority had signed it. (CP Dkt. No. 63, Capitol, No. 2196 of 2003, slip op. at 15 and Ex. 1 thereto). Accordingly, this claim is without merit and Petitioner is not entitled to relief under AEDPA.

**(2) Any Claim That Petitioner Did Not Raise In His First PCRA Proceeding Is Procedurally Defaulted**

To the extent that Petitioner is raising any additional ineffective assistance or prosecutorial misconduct claims in this proceeding, those claims are denied because he failed to exhaust them and therefore has committed insurmountable procedural default. That is because a federal habeas court may not grant a state prisoner's petition for a writ of habeas corpus unless he has first presented his federal constitutional claims to the state courts. 28 U.S.C. § 2254(b)(1)(A). See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843 (1999); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). This "exhaustion"

doctrine is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights.'" Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002), quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991).

In order to exhaust a claim, a petitioner must "fairly present" it to each level of the state courts. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 848. In Pennsylvania, this requirement means that a petitioner in a non-capital case must have presented every federal constitutional claim raised in his habeas petition to the Common Pleas Court and then the Superior Court either on direct or PCRA appeal. See Lambert, 387 F.3d at 233-34.

Although, generally, a district court should require that a state prisoner return to state court to litigate those claims that are not exhausted, see Crews v. Horn, 360 F.3d 146 (3d Cir. 2004), the court may "excuse" a petitioner's failure to exhaust as "futile" if it is clear that his claims are now barred from review under state law. Gray v. Netherland, 518 U.S. 152, 161 (1996). Futility is established where "exhaustion is not possible because the state court would refuse on procedural grounds to hear the merits of the claims." Lines, 208 F.3d at 164.

Requiring Petitioner to return to state court to attempt to litigate any claims there which he previously failed to raise would be "futile" because he is foreclosed from doing so under Pennsylvania law.[6] A finding by a district court that exhaustion is "futile" often results, as it does here, in a finding that the claims at issue are barred from federal habeas review under the procedural default doctrine. Lines, 208 F.3d at 160; Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000). Like the exhaustion doctrine, the doctrine of procedural default is "grounded in concerns of comity and federalism,"

[6] The PCRA expressly limits the availability of relief and requires, with few exceptions not applicable here, that a post-conviction petition be filed within one year of the date a judgment becomes final. 42 Pa.C.S. § 9545(b)(1). Since more than one year has passed since Petitioner's judgment of sentence became final, any PCRA motion that he might now attempt to file would be untimely and non-reviewable in the Pennsylvania courts. Additionally, if he returned to state court to attempt to litigate the claims at issue in another PCRA motion, the state court likely would determine that he waived the claims. See 42 Pa.C.S. § 9544(b).

Coleman, 501 U.S. at 730, and it bars federal habeas review of a claim whenever the petitioner has failed to raise it in compliance with a state's procedural rules. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).[7]

In conclusion, any claim that Petitioner seeks to raise here which he did not also raise in his first (and only proper) PCRA proceeding is procedurally defaulted and should be denied for that reason.

### (3) Was Petitioner's Sentence Illegal?

In his final claim, Petitioner contends that his sentence is illegal because "the crimes charged demonstrate that all of the charges arose out of one crime with one intent and one design." Petitioner raised this claim in his second PCRA proceeding. The Superior Court denied it as untimely because it was filed outside of the PCRA's one-year statute of limitations, 42 Pa.C.S. § 9545(b). (CP Dkt. No. 76, Capitol, No. 965 WDA 2008, slip op. at 5-6).

Because the Superior Court denied this claim as untimely, it also is procedurally defaulted, because that doctrine prohibits federal habeas courts from reviewing a state court decision denying a federal constitutional claim when the state court's decision is based on a rule of state law that is "independent" of the federal question and "adequate" to support the judgment. See, e.g., Gray v.

---

7 A petitioner whose constitutional claims are procedurally defaulted can overcome the default, thereby allowing federal court review, if he can demonstrate "cause" for the default, i.e., that some objective factor "external to the defense" impeded efforts to comply with the state's procedural rule, and "actual prejudice." Coleman, 501 U.S. at 750; see also Murray v. Carrier, 477 U.S. 478, 488, 494 (1986). Petitioner has not met that burden with respect to any of the ineffective assistance or prosecutorial misconduct claims that he failed to raise in his first PCRA proceeding, or with respect to his claim that his sentence was illegal, which (as discussed below) is procedurally defaulted because the Superior Court held that it was untimely.

Another exception to the procedural default doctrine is the "miscarriage of justice" exception. It provides that a procedural default may be excused if the petitioner presents evidence of "actual innocence" that is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error[.]" Schlup v. Delo, 513 U.S. 298, 316 (1995). It only applies in extraordinary cases where the petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Id. This is not one of the rare cases in which the fundamental miscarriage of justice rule is implicated.

Netherland, 518 U.S. 152, 162 (1996); Coleman, 501 U.S. at 732. A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. See, e.g., Ake v. Oklahoma, 470 U.S. 68, 75 (1985). That is the case here, since the Superior Court's decision was based on the application of a state statute of limitations rule. A state rule is "adequate" if it is "firmly established and regularly followed" at the time that the alleged procedural default occurred. Ford v. Georgia, 498 U.S. 411, 423-24 (1991). See also Nara v. Frank, 488 F.3d 187, 199 (3d Cir. 2007) (a state rule is adequate when a state appellate court reviewing the petitioner's claim refused to review it on the merits because the petitioner failed to comply with the rule and the state court's refusal was consistent with other decisions); Beard v. Kindler, — U.S. —, 130 S.Ct. 612 (2009) (discretionary state rules can be "adequate"). The state rule at issue here qualifies as "adequate" because it was firmly established and regularly followed in Pennsylvania at the time Petitioner's default occurred.

Accordingly, the Superior Court's dismissal of this claim was supported by independent and adequate state law grounds and therefore it is procedurally defaulted and must be denied.

### C. Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. 28 U.S.C. § 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it

debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Applying those standards here, jurists of reason would not find it debatable whether each of Petitioner's claims should be denied. Accordingly, a certificate of appealability should be denied.

## III. CONCLUSION

For the foregoing reasons, it is respectfully that recommended that the petition for a writ of habeas corpus be denied and that a certificate of appealability be denied.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: August 25, 2011

cc: The Honorable Sean J. McLaughlin
United States District Judge